The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the matters contained within I.C. Forms 21 and 26 approved by the Industrial Commission in this case and the following, which were entered into by the parties at the hearing, as:
STIPULATIONS
1. Defendants continued to pay compensation to plaintiff pursuant to the I.C. Form 26 Agreement up to the date of the July 15, 1994 hearing.
2. The parties stipulated into evidence 133 pages of medical records and reports.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. As of September 21, 1988, plaintiff was 38 years old and was employed by defendant tire manufacturer as a thermal couple technician. She sustained a compensable injury by accident on that date as she was pushing a flat bed truck when a spring on the truck snapped and her right arm and shoulder were jerked backwards. She had previously been treated for problems with that shoulder, and after the injury complained of pain and numbness in the arm and shoulder. During the month after the injury in question, she was seen at Urgent Care, by Dr. Askins and by Dr. Kilgore for right arm, shoulder and neck pain. Dr. Ghostine, a neurosurgeon, then assumed her care in that she had evidence of a C-6 radiculopathy. He subsequently performed surgery on March 30, 1989 to decompress and fuse the C5-6 and C6-7 interspaces.
2. Following the operation, plaintiff complained of problems with her right shoulder so Dr. Ghostine referred her back to Dr. Askins regarding that condition. Dr. Askins treated her conservatively until July 1989 when he manipulated the shoulder under anesthesia. Her shoulder condition then improved and he released her to return to work on July 28. By that time Dr. Ghostine had also released her with respect to her neck problem and she did return to work for defendant-employer for a period of time.
3. Plaintiff continued to complain of neck pain and some right arm symptoms and in November 1989 was sent to Dr. Chapman for evaluation. He ordered further diagnostic tests and determined that she had spinal cord compression at C5-6 and C6-7. Consequently, on January 12, 1990 he performed surgery to decompress and re-fuse those levels. Following the surgery, plaintiff still complained of right arm pain so Dr. Chapman ordered another myelogram which revealed some mild residual stenosis at C5-6. He then referred her to Dr. Pfeiffer for evaluation. Dr. Pfeiffer saw her on July 11, 1990 and initially thought that she probably had carpal tunnel syndrome since there was no evidence of radiculopathy, but he subsequently decided that most of her pain was mechanical.
4. Dr. Chapman also referred plaintiff to Dr. D'Alessandro regarding her shoulder complaints. Dr. D'Alessandro first examined her on July 24, 1990 and diagnosed her shoulder condition as adhesive capsulitis. He ordered physical therapy and prescribed medication, but he believed that most of her symptoms were related to her neck problems. Dr. Chapman then recommended that she go through a pain management program.
5. By March 10, 1992 Dr. Chapman felt that plaintiff had signs of reflex sympathetic dystrophy and he referred her to Dr. Brigham who examined her on March 27. She complained of severe symptoms at that appointment and refused to move her arm so that he could properly evaluate her condition. Dr. Brigham concluded that her symptoms were out of proportion to the objective findings and he recommended that she return to work at a light or moderate job. She then returned to Dr. Chapman's care. He continued to recommend pain management for what he thought was reflex sympathetic dystrophy, but apparently defendants were not willing to provide it at that time. However, she began receiving the treatment shortly before his testimony was taken.
6. On June 27, 1992 plaintiff was observed working for a landscaping company operated by her live-in boyfriend. She lifted and carried plants potted in three gallon containers and placed them in specific places in the yard where the crew was working. She used her right arm freely not only in moving the plants but also wiping her forehead, motioning with her hand when instructing other workers and placing her hands on her hips. When one of the people who had seen this activity walked over to the work site, her behavior abruptly changed and she drew up her arm. Thereafter, she acted as though the arm bothered her so much that she could not use it.
7. Defendants admitted liability for benefits under the Workers' Compensation Act for plaintiff's September 21, 1998 injury and paid compensation to her for the time she was out of work until the incident in June 1992. They then filed a Form 24 with the Industrial Commission requesting that they be allowed to stop payment. However, the request was denied, so compensation was continued until the date of hearing.
8. As of June 27, 1992, plaintiff was clearly misrepresenting the severity of her symptoms and the extent of her limitations. Her behavior on that occasion demonstrated an intent to deceive, and her testimony that this was a one time occurrence is not accepted as credible. Dr. Chapman relied on the truthfulness of her complaints in forming his diagnoses and opinions. Since she also misrepresented the nature of her condition to him, his opinions cannot be found valid. Dr. Brigham correctly concluded that her symptoms were out of proportion to her objective findings.
9. The nature of plaintiff's condition and the extent of her earning capacity as of June 27, 1992 cannot be determined due to her deceitfulness. She was certainly capable of performing landscaping work and probably had been doing it for some time previously. Based upon the evidence of record, the Form 24 request to stop payment should have been approved.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As of June 27, 1992 plaintiff was not only capable of working but was working and therefore not entitled to further compensation for temporary total disability. N.C. Gen. Stat. § 97-29; Andersonv. Northwestern Motor Company, 233 N.C. 372 (1951).
2. Defendants are entitled to a credit for the compensation paid to plaintiff since June 27, 1992. N.C. Gen. Stat. § 97-42.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants may terminate payment of compensation to plaintiff and are entitled to a credit for the compensation they have paid since June 27, 1992.
2. Each side shall bear its own costs.
 S/ ______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _______________________ J. HOWARD BUNN, Jr. CHAIRMAN
S/ _______________________ THOMAS J. BOLCH COMMISSIONER